■ DONALD B. BOYD, as Administrator of the Estate of ELEANOR L. BOYD, Deceased, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 64959.) — Appeal from a judgment of the Court of Claims (Hanifin, J.), entered January 26, 1984, which dismissed the claim. ¶ On January 18, 1979, at approximately 7:30 A.M., claimant's intestate, while traveling east on Interstate 88 (I-88), a four-lane divided highway, was involved in a one-car accident near the entrance ramp of State Route 205 in Otsego County which resulted in her death. On the previous day, a mid-day storm had deposited about four inches of snow and the road surface was very slippery; the passing lane was covered with approximately one to one and one-half inches of hard-packed snow and ice and the driving lane, though clear of snow, was covered by an icy film. Earlier in the morning of January 18, both lanes had been plowed and treated with "abrasives sweetened with salt". The temperature that morning was approximately 10 degrees Fahrenheit, but calcium chloride, the treatment recommended in the Department of Transportation's (DOT) highway maintenance guidelines for snow removal at temperatures below 20 degrees, had not been applied. ¶ Decedent had entered the left lane and, at a speed estimated to be approximately 40 miles per hour, passed a vehicle traveling at about 35 miles per hour. Upon re-entering the right lane, her car skidded into a snowbank, flipped over on its top, and slid across the recovery area abutting the highway down an embankment into the frigid waters of the Susquehanna

River. Drowning was the cause of death. The Court of Claims determined that the State was not negligent for failing to treat the highway surface with calcium chloride prior to the accident, nor for failing to erect a guide rail between the road surface and the river. This appeal by claimant followed. ¶ Calcium chloride speeds the melting action of rock salt at lower temperatures, thus facilitating the plowing of hard-packed snow and ice on highway surfaces. Although DOT's highway maintenance guidelines recommend that calcium chloride be included in the mixture used to treat highways when the temperature is below 20 degrees Fahrenheit, the guidelines contain caveats that these mixtures should be used early in the day to avoid night time freezing and that good judgment in the application of chemicals is necessary. Otsego County followed a policy of infrequent use of calcium chloride because of the concern that refreezing would create a more hazardous condition than that already existing. Justifying this departure from the guidelines, the county resident engineer testified that experience had shown that for its terrain, climate and traffic conditions, the recommendations in the guidelines for temperatures below 20 degrees Fahrenheit were not effective in Otsego County. The reasonableness of this policy is supported by the fact that the temperature was in fact dropping on this particular morning, making the threat of refreezing very real. The decision not to apply calcium chloride to the roadway was made in good faith, is supported by the then prevailing weather conditions, and was a reasonable exercise of discretion as to what materials to use for the removal of snow and ice from a public highway (see *Tomassi v Town of Union,* 46 NY2d 91, 97). ¶ Regarding the absence of a guide rail, claimant argues that the criteria adopted by DOT in its highway design manual and highway maintenance guidelines, which require a clear zone of at least 30 feet with a slope no steeper than one in six (one foot vertical drop for each six feet traversed horizontally) between the edge of the pavement and a roadside hazard along highways with traffic speeds of 50 miles per hour or more, were adopted without adequate study, lacked a reasonable basis and, in any event, should not have been followed here. This standard is based primarily on a study conducted in Detroit, Michigan, by a major car manufacturer. The study concluded that 80% of errant vehicles did not travel farther than 30 feet from the roadway edge and that 90% did not travel farther than 50 feet. Given these statistics, it cannot be said that no reasonable official or expert could have chosen to adopt the 30-foot standard. Further, no evidence was submitted that due care was not used by DOT when it adopted this standard (see *Weiss v Fote,* 7 NY2d 579). ¶ Moreover, the decision of the engineers engaged in constructing I-88 not to deviate from this standard was, in this instance, reasonable. The area of recovery extended for 47 feet and the slope was one in 10, affording a significantly wider recovery area and gentler slope than that recommended. The record shows that the engineers' decision was based on these factors, as well as a recognition of the independent hazard which guide rails themselves present and the configuration of the road itself; at this point, the road follows a tangent to a gentle curve whereby, assuming a loss of vehicular control, centrifugal force should direct a car away from the river (see *Schwartz v New York State Thruway Auth.,* 95 Ad2d 928, affd 61 NY2d 955). ¶ In addition, the Court of Claims found that, in the four years the highway had been open, no complaints had been lodged about this stretch of road and no accidents had been reported. It also found, and the evidence in the record warrants the conclusion, that, considering the slippery road conditions which existed despite the State's efforts, the cause of this tragic accident was the speed and manner in which decedent's car was being driven. ¶ Judgment affirmed, without costs. Main, J. P., Casey, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.